UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

JULIAN MOODY,

                     Plaintiff,                                                                     1:15-cv-01072

  -against-

NATIONAL FOOTBALL LEAGUE

                     Defendants.
-----------------------------------------------------------X

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff JULIAN MOODY by and through his undersigned counsel, by and through the undersigned counsel, and says:

### AS AND FOR A FIRST CAUSE OF ACTION-ADA

1. Plaintiff JULIAN MOODY resides in Queens County and was a student of the Department of Education and a participant of the National Football League/High School Player Development Program.

2. Defendant NATIONAL FOOTBALL LEAGUE (hereinafter "NFL") is an unincorporated nonprofit association with its principal place of business in New York City and is within the jurisdiction of this Court.

3. Defendant NFL is a professional American football league of 32 teams, divided equally between the National Football Conference (NFC) and the American Football Conference (AFC).

1

4. Defendant NFL, in relevant part, also directs and manages the National Football League/High School Player Development Program in New York.

5. This court has jurisdiction over the subject matter of this proceeding pursuant to pursuant to 28 U.S.C. § 1331.

6. The NFL is a recipient of federal financial assistance as defined by Section 504 (29 U.S.C. 794) and the regulations promulgated thereunder. 34 C.F.R. § 104.33.

7. The NFL High School Player Development program (hereinafter NFL/HSPD) which the NFL manages and operates, addresses challenges facing high school football programs across the country focusing primarily on underserved communities. HSPD serves as a free resource for both high school players and coaches. The program emphasizes safety and concussion awareness, character development and life skills, and football fundamentals.

8. More specifically, the NFL/HSPD is intended to provide high school players from across the United States the opportunity to develop their football skills over the course of several weeks. The program culminates in the national tournament, where players coming out of the various regional divisions of the program compete. In New York City, the program included teams from Manhattan, Queens, Brooklyn and the Bronx. The teams competed against one another in a citywide competition to determine which players would participate in the national tournament under the banner of the New York Jets Team.

9. The amount in controversy exceeds the minimum jurisdiction of this Court.

10. Both the stadium where the NFL/HSPD tournament takes place and the location of where the program takes place are places of public accommodation.

11. More specifically, the NFL sponsors and operates the HSPD, and this program uses DOE and other public facilities. The NFL rented DOE facilities for this program; however the coaches working during the summer for the NFL/HSPD program were working for the NFL and under its supervision. See Exhibit "A

12. Plaintiff is a qualified individual (Type 1 Diabetes Mellitus) with a disability in that he met the essential requirements for the receipt of services and reasonable accommodations.

13. The NFL/HSPD was advised of Plaintiff's disability and was provided medical documentation. Specifically, Bayside Football coach Jason Levitt was provided with Plaintiff's medical records. This was a requirement by Defendant in order to participate in the program. Plaintiff also submitted section 504 accommodations' documentation.

14. Plaintiff met the essential requirements for the receipt of services but the access to services was denied due to his disability. The actions set forth below had a profound and ever lasting impact on Plaintiff. These actions are deliberate, and intentional discrimination.

15. During the summer of 2012, Plaintiff participated in the tournament sponsored by the NFL/HSPD. The program enables high school players to compete in a play against other top players from around the country.

16. For the 2012 tournament, 32 teams participated, one for each team in the NFL. Each team sent 12 students. The New York City's team played under the banner of the New York Jets.

17. Various teams from Manhattan, Queens, Brooklyn and The Bronx competed against one another in a citywide tournament for the right to send 12 of their own students-athletes to represent New York City in the national tournament held in Indianapolis (Indiana) from July 12 through July 15, 2012, based on the team's winning record.

18. Plaintiff participated in the Queens program. He was recommended to the NFL/HSPD program by his Football Coach from Bayside High School, Jason Levitt.

19. On or about June 23, 2012, Plaintiff's team had a competition at a football field in Lincoln High School in Brooklyn and was victorious in the citywide tournament.

20. As instructed by the coaches/organizers (at the time they won), on June 25, 2012, Plaintiff's team reported to the Roy Wilkins Park Football Field located in Jamaica, Queens for practice and trip arrangements. This was done in preparation for the national competition.

21. On that day, and in the presence of all his teammates, Plaintiff was unexpectedly told by Coach Willie Beverly from August Martin High School, that Plaintiff was excluded from participating in the National Tournament held in Indianapolis (Indiana) from July 12 through July 15, 2012. This information was conveyed also in front of Coach James DeSantis from Flushing

High School. Specifically, Plaintiff was told that he "was not traveling with his winning team to Indianapolis, but that he could stay for practice."

22. The announcement was extremely devastating to Plaintiff as he had earned his place to participate in this tournament and he was a member of the winning team which was traveling. Plaintiff was publicly humiliated in front of his peers and no one informed his parents of the decision to exclude Julian from the program, even though when the events occurred Julian Moody was a minor.

23. The coaches that announced the decision publicly were coaches from Queens NFL/HSPD that even though also worked for the Department of Education during the rest of the year, were working for the NFL program during that summer.

24. Plaintiff participated in the Queens program, whose director and two coaches were upon information and belief, NFL employees. Upon information and belief, the NFL hired and compensated the coaches for their work in the NFL/HSPD program.

25. Upon information and belief, since the incident, coaches Willie Beverly and James DeSantis had been either fired and/or demoted from their positions. At the time of the incident, the aforementioned coaches were working during the summer for the NFL/HSPD program and were employees of the NFL.

26. Additionally, upon information and belief, since the incident, the NFL/HSPD entrance requirements and the rules have changed and it is now more difficult to join the program.

27. It is also noted that before Plaintiff joined the NFL/HSPD program, Plaintiff was subjected to a thorough physical examination before joining the NFL/HSPD program and that in that examination, which was required in order to participate in program, Plaintiff disclosed that he had a disability (Type 1 Diabetes Mellitus).

28. Defendant had knowledge of Plaintiff's disability.

29. In addition, it is also important to point out that out of all the members of his winning team, Plaintiff was the only one who had a disability and the only one who was excluded from participating in the national tournament held in Indianapolis.

30. Plaintiff was thereafter replaced by a football player from one of the losing teams, who was a student at Jamaica High School at that time. This student did not perform as well as Plaintiff, but he did not have any disability.

31. As a consequence of Defendant's actions, Plaintiff was emotionally devastated and humiliated in the presence of his teammates.

32. The emotional damage was so severe that Plaintiff relinquished his dream of becoming a professional football player and he never played the sport again despite his numerous accomplishments.

33. The NFL/HSPD is of significant benefit in securing football scholarships in College.

34. Upon information and belief, many college recruiters attend the national championships and offer several college scholarships to the players. Plaintiff never had this opportunity because he excluded due to his disability despite his meritorious right to participate.

35. In addition, many of the players who went to Indianapolis did not attend all practices, were not performing well academically or behaviorally. For instance, a football player named W.O. who went to Indianapolis was later removed from the Bayside High School Football Team because he was allegedly underperforming. He was later reinstated to the football team after an appeal.

36. By contrast, Plaintiff met all the requirements, yet he was excluded from participation despite being a member of the team that won the citywide competition.

37. Plaintiff's performance was so superior that during the 2012-2013 football season, Plaintiff led the New York City High Schools in touchdowns and passing yards. He went All-Borough and made the All-Academic Team.

38. On December 9, 2012, the Queens High School Football Coaches Association named Plaintiff All Borough Selection 2012 Quarterback/Bowl Division in the North vs. South Q-35 Queens High School Seniors All Star Games. Plaintiff was also selected as one of the New York City Football Top 120 Players for the 2012-2013 Season, as per the Public Schools Athletic League (PSAL) and the Catholic High School Athletic Association (CHSAA) as posted in the PSAL website on or about January 08, 2013.

39. For instance, Plaintiff was a recipient of citywide awards, and he was honored by the PSAL in a citywide ceremony. On January 24, 2013, he received the All-Academic 2012 Award and All-Borough 2012 Award (Quarterback) from the New York City Football Coaches Association (NYCFCA) at its All-Borough/All-City Selection Dinner held in Brooklyn.

Additionally, in May 2013, Julian was selected to receive the excellence on Boys' football award by Bayside High School and he was honored on June 04, 2013.

      40.      Reportedly, the player from the losing team who replaced Julian did not perform well during the season.

      41.      The DOE coaches, operating under the umbrella of NFL/HSPD alleged that "they were not aware that Plaintiff has a disability" and that "the decisions about the advancement were made strictly on the basis of athletic merit". However, this is a pretexual reason because Plaintiff's team was victorious in the citywide tournament, and Plaintiff was the best quarterback, yet the only player from the winning team who was not guaranteed to advance to the tournament in Indianapolis, although he had earned his right to do so.

      42.      Defendant's actions against Plaintiff have had a profound and ever lasting impact on him including, but not limited to, irreparable damage to his academic career and professional career. These actions were deliberate, and intentional discrimination.

      43.      As a result of Defendant's actions, Plaintiff had also suffered from depression and he has given up many other activities. For instance, at the time the events transpired, Plaintiff had to cancel an international trip to Turkey as well as church, martial arts and music performances, among other activities, as he was looking forward to his trip to Indianapolis with his winning team.

44. Since this incident, Plaintiff has lost interest in football, which had been a career goal. For instance, his passion for football was so great that Plaintiff's teacher at PS/IS 270Q (Ms. Allen) failed him on one occasion because any time she asked him to write an essay, the only topic that he chose was football. Before this incident, when someone asked Plaintiff about his future professional career, he would reply: " I want to become a football player." Julian's dream was to play football in college and possibly joining the NFL.

45. By depriving Plaintiff of his right to represent the New York Jets in Indianapolis, he missed a once in a lifetime opportunity to be exposed to a national experience that could have led to possible recruitment and scholarship offers by some colleges. Since the incident, Plaintiff's self-esteem has been affected profoundly.

46. As a result of the foregoing conduct, the NFL has violated. Section 504, 29 U.S.C.§ 794 and the regulations promulgated there under resulting in Plaintiff being damaged.

47. The defendant, the NFL violated the Rehabilitation Act, 29 U.S.C. Section 504, et seq. by discriminating against Plaintiff.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant her judgment containing the following relief:

a. A declaration that the NFL has violated Section 504 of the Rehabilitation Act and any other equitable relief that the Court deems necessary to correct the conditions complained of herein,

9

b. An award of damages to be determined at the time of trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury.

c. An award of reasonable attorney's fees and the costs of this action; and

d. Such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY**

Dated: New York, New York
July 07, 2015

                                                  Yours etc.,

                                                  /*Stewart Lee Karlin*
                                                  STEWART LEE KARLIN
                                                  NATALIA KAPITONOVA
                                                  Attorneys for Plaintiff
                                                  9 Murray Street, Suite 4W
                                                  New York, NY 10007
                                                  (212) 792-9670
                                                  slk@stewartkarlin.com